# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FRESENIUS MEDICAL CARE
    MIDWEST DIALYSIS LLC, et al.,

           Plaintiffs,

      v.                                      Case No. 16-CV-711

HUMANA INSURANCE COMPANY, et al.,

           Defendants.

## DECISION AND ORDER

### I.    Introduction

Plaintiffs Fresenius Medical Care Midwest Dialysis, LLC, Bio-Medical Applications of Wisconsin, Inc., and Wisconsin Renal Care Group, LLC (collectively, Fresenius) provide dialysis treatments to patients who suffer from end stage renal disease, a chronic kidney disease. (ECF No. 54, ¶¶ 1-3; ECF No. 56, ¶ 1.)

Defendants Humana Insurance Company, Humana Wisconsin Health Organization Insurance Corporation, and/or Humana, Inc. (collectively, Humana) provided or administered health benefit plans for defendants Holy Redeemer Academy, Mee Enterprises, Inc., Spiros Industries Inc., OEC Graphics, Inc., Ascential Service LLC,

Meat Processors Inc., Building Service, Inc., and Kald Tool & Die Corporation. Persons covered by these plans received dialysis from Fresenius, and under an agreement with Fresenius Humana reimbursed Fresenius up to an annual limit of $30,000 per person. (ECF No. 56, ¶ 12.) Contending that this annual limit on dialysis benefits is unlawful as of 2013 in light of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, Fresenius filed this action.

The parties have filed cross-motions for partial summary judgment. The briefing on the motions is complete and the motions are ready for resolution. All parties consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 38.) The court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

## II. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not all factual disputes will preclude summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 563 (7th Cir. 2012). A factual dispute is only "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the non-

movant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

   III.   Analysis

Congress enacted the ACA in 2010 in an effort to comprehensively reform the nation's health care system. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 590, 132 S. Ct. 2566, 2609, 183 L.Ed.2d 450, 500 (2012) (Ginsburg, J., dissenting in part). The ACA is a sprawling and complicated piece of legislation comprising ten titles and spanning over 900 pages with hundreds of provisions. *Id.* at 538-39. Most relevant here, the ACA generally barred insurers from imposing annual or lifetime limits on anything that is an "essential health benefit". (ECF No. 56, ¶ 17.) This prohibition on annual caps for essential health benefits was phased in so that for plans beginning on or after September 23, 2012, the limit could be no less than $2 million. 45 C.F.R. § 147.126(d)(1)(iii) (Oct. 1. 2013 ed.). The limit was eliminated entirely for plan years starting in 2014. There is no dispute that the ACA's requirements regarding essential health benefits apply to the defendants and their plans.

"Essential health benefit" is a term of art under the ACA that Congress left to the Secretary of the Department of Health and Human Services (HHS) to define. 42 U.S.C. § 18022(b). Having said that, Congress said that the Secretary shall make sure essential health benefits include

3

> at least the following general categories and the items and services covered within the categories:
> (A) Ambulatory patient services.
> (B) Emergency services.
> (C) Hospitalization.
> (D) Maternity and newborn care.
> (E) Mental health and substance use disorder services, including behavioral health treatment.
> (F) Prescription drugs.
> (G) Rehabilitative and habilitative services and devices.
> (H) Laboratory services.
> (I) Preventive and wellness services and chronic disease management.
> (J) Pediatric services, including oral and vision care.

42 U.S.C. § 18022(b). Congress further stated that "[t]he Secretary shall ensure that the scope of the essential health benefits … is equal to the scope of benefits provided under a typical employer plan, as determined by the Secretary." 42 U.S.C. § 18022(b)(2). To enable the Secretary to assess what sorts of benefits were typical in employer plans, Congress required the Secretary of Labor to conduct a survey of employer plans. *Id.*

It was a long and complicated process, but eventually the Secretary left it to each state to articulate the scope of essential health benefits in that state. States did so through the adoption of a "benchmark plan." Although Humana applied the $30,000 cap to dialysis services provided under the relevant plans issued in 2014, it now concedes that such an annual limit on dialysis services is unlawful (ECF No. 54, ¶¶ 21-22) given that Wisconsin's benchmark plan includes coverage for dialysis. Humana has agreed to reprocess Fresenius's claims that went unpaid or underpaid due to the annual limit Humana applied after 2013, but it has not yet fully done so. (ECF No. 54, ¶¶ 22-

4

24.) However, the parties dispute whether dialysis was an essential health benefit before 2014.

Before essential health benefits were defined with the adoption of the state benchmark plans, the departments charged with enforcing compliance with the ACA stated in an interim final rule issued on June 28, 2010, that they would "take into account good faith efforts to comply with a reasonable interpretation of the term 'essential health benefits'." 75 Fed Reg. 37188, 37191. The parties agree that this "reasonable interpretation" standard applies to the question of whether Humana complied with the ACA in capping dialysis benefits at $30,000 in 2013. Thus, the question at the root of the present dispute is whether it was unreasonable for Humana to conclude that dialysis was *not* an essential health benefit in Wisconsin in 2013. (*See, e.g.*, ECF No. 57 at 2.)

The court is not persuaded by the defendants' implication that the term "essential health benefits" lacked any meaning before the adoption of state benchmark plans for 2014. (*See, e.g.*, ECF No. 57 at 4-5.) If "essential health benefits" had no meaning prior to the Secretary defining that term, it would have been unnecessary for the departments charged with enforcing the ACA to state how they would interpret the term for compliance purposes. *See* 75 Fed Reg. 37188, 37191. Moreover, the regulations regarding the phase-in of the dollar limits for essential health benefits, *see* 45 C.F.R.

§ 147.126 (Oct. 1. 2013 ed.), would have been superfluous if "essential health benefits" did not have any meaning in 2013.

### A. Humana's Motion for Partial Summary Judgment

In support of its position that it was reasonable to conclude in 2013 that dialysis was not an essential health benefit, Humana contends that 12 states did not expressly include dialysis in their initial proposed benchmark plans. (ECF No. 57 at 2-3.) In short, Humana's argument is that its position was reasonable because 12 state plans agreed with it.

As support for its statement that 12 states allegedly did not "expressly" include dialysis as an essential health benefit in their initial benchmark plans, Humana cites to the website of the Centers for Medicare and Medicaid Services (CMS) (ECF No. 45 at 16-17). The CMS website states that it "contains information on the essential health benefit benchmark plans for each of the 50 states and the District of Columbia." https://www.cms.gov/cciio/resources/data-resources/ehb.html (last visited on September 5, 2017). The site contains for each state a "2014-2016 summary of EHB Benchmark Plan benefits, limits and prescription drug coverage." *Id.* "In plan years 2014 through 2016, the essential health benefit benchmark plan is a plan that was sold in 2012." *Id.* The site does not appear to contain the actual benchmark plans purportedly summarized.

The "2014-2016 summary" for each state consists of a chart with several columns. Column A is entitled "Benefit," Column B is entitled "EHB," and column D is entitled "Is the Benefit Covered." Column A then lists dozens of categories of medical care, one of which is "Dialysis." In the summaries of the 12 states identified by the defendants, next to "Dialysis" the space in Column B is blank and in Column D is written, "Not Covered." In contrast, next to "dialysis" the summaries from all of the other states say "Yes" in Column B and "Covered" in Column D.

Humana asks the court to rely on these summaries to conclude that 12 states affirmatively concluded in their initial benchmark plans that dialysis was not an essential health benefit. But there are problems with that argument. First, the alleged fact that 12 states did not cover dialysis is not presented in any proposed finding of fact submitted in support of the parties' summary judgment motions. Nor is the alleged fact supported by any affidavit or declaration. Rather, Humana asks the court to accept factual representations contained on the CMS website as true for purposes of deciding its motion for summary judgment. While under certain circumstances it might be appropriate to look to reliable websites to support certain facts, Humana is asking the court to rely on a website as the foundation of its argument. The court does not find that that is the sort of adjudicative fact subject to judicial notice under Fed. R. Evid. 201.

But, perhaps more importantly, the information contained on the website is merely a summary. Courts must be cautious in accepting summaries. *See* Fed. R. Evid.

1006. The court has no information as to the means or methods used in compiling the summaries or the care exercised in doing so. Moreover, health insurance policies are complex documents and their benefits covered might not always fit within pre-set categories, or provisions might appear contradictory. *See* Center for Consumer Information and Insurance Oversight, "Essential Health Benefits Bulletin (Dec. 16, 2011) at 4 ("There is not yet a national standard for plan reporting of benefits."). A regulation standardizing insurers' summaries of benefits and coverage was not implemented until 2015. *See* 29 C.F.R. § 2590.715-2715; 80 Fed. Reg. 34307. Thus, especially with respect to older policies, some degree of interpretation and analysis may be required to determine whether a service is covered.

For example, Humana identifies the Vermont benchmark plan as one that did not provide coverage for dialysis. And it is true that, on the summary, next to "Dialysis" the "EHB" column is blank and under "Is the Benefit Covered" it says "Not Covered." *See* https://www.cms.gov/CCIIO/Resources/Data-Resources/Downloads/Updated-Vermont-Benchmark-Summary.pdf, at 6 (last visited on September 5, 2017). But the summary also states that "Outpatient Rehabilitation Services" *are* an essential health benefit and covered under the Vermont benchmark plan, and the "Explanations" column describes that benefit as follows: "Typically include physical, occupational, and speech therapy, but may also include radiation therapy, chemotherapy, *dialysis*, infusion therapy." *Id.* at 4 (emphasis added). So is dialysis covered as an essential health benefit under

Vermont's benchmark plan or not? In short, even assuming that the person compiling the summary accurately determined that a particular plan did not explicitly and independently denote coverage for dialysis, the absence of a "Yes" in the EHB column next to "Dialysis" does not necessarily mean that the plan excluded coverage for dialysis. Further, the fact that all plans eventually expressly covered dialysis, (*see* ECF No. 55 at 11, fn. 3 (citing https://www.cms.gov/cciio/resources/data-resources/ehb.html (2017 benchmark plans for Alabama, Alaska, Delaware, Louisiana, Massachusetts, Minnesota, Mississippi, New Mexico, Oklahoma, Pennsylvania, South Dakota, and Vermont))), might suggest that the initial conclusion that a particular plan did not cover dialysis was more a result of a lack of clarity in the plan rather than an actual exclusion of coverage.

In sum, setting aside the question of whether proof that 12 states did not cover dialysis in their initial benchmark plans actually supports a conclusion that Humana's position was reasonable, the evidence upon which Humana rests its argument that its conclusion was reasonable is not necessarily reliable. Consequently, for purposes of summary judgment the court must disregard the factual assertions attributed to these summaries. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (evidence relied upon at the summary judgment stage must be competent evidence of a type otherwise admissible at trial); *see also* Fed. R. Civ. P. 56(e). All Humana is left with is its bald assertion that its interpretation of essential health benefits as not including

dialysis prior to 2014 was reasonable. That is not sufficient to establish that Humana is entitled to partial summary judgment. Because Humana has failed to show that it was reasonable for it to conclude that dialysis was not an essential health benefit, the court must deny its motion.

### B. Fresenius's Motion for Partial Summary Judgment

Fresenius first contends that Congress defined essential health benefits as all of the items and services encompassed in the ten categories listed in 42 U.S.C. § 18022(b)(1). (ECF No. 48 at 8.) One of those categories is "chronic disease management." 42 U.S.C. § 18022(b)(1)(I). Humana does not dispute that end stage renal disease is a chronic disease. (ECF No. 54, ¶ 3.) And, according to Fresenius, dialysis is the only means of managing it. Therefore, dialysis for patients suffering from end stage renal disease must be an essential health benefit, and it was unreasonable for Humana to conclude otherwise.

The court disagrees that *every* item and service that might fall within the ten categories listed in § 18022(b)(1) (including chronic disease management) is covered as an essential health benefit. If Congress had actually intended to define essential health benefits by listing those ten categories, there would be nothing left for the Secretary to define. Yet Congress instructed the Secretary to define essential health benefits. Moreover, in 42 U.S.C. § 18022(b)(2)(A), Congress instructed the Secretary to "ensure that the *scope* of the essential health benefits under paragraph (1) is equal to the *scope* of

benefits provided under a typical employer plan, as determined by the Secretary." (Emphasis added.) Congress simply identified the categories of items and services that plans must cover. Consequently, for example, plans could no longer categorically exclude coverage for services such as maternity care or hospitalization. But identifying what items and services *within* each of the ten categories were covered as essential health benefits was left to the Secretary. Thus, not every service that arguably might be a type of "chronic disease management" was necessarily an essential health benefit. Only if the Secretary concluded that the service was covered by a typical employer plan would a service be an essential health benefit.

The court also finds unpersuasive Fresenius's argument that the issue is as simple as noting that dialysis is "essential" in the sense that without it a person with end stage renal disease will die (barring a successful kidney transplant). (ECF No. 58 at 7.) The court does not read the statute's reference to a health benefit as "essential" to mean the item or service is necessary to sustain the life of the insured. Rather, when the statute refers to a health benefit as "essential" it means a health benefit that is absolutely necessary to a health plan.

Fresenius also contends that, because dialysis was an essential health benefit as of 2014, it must have been an essential health benefit before 2014. (ECF No. 58 at 1.) But the issue is whether an insurance company assessing the issue *before* the benchmark plans were adopted, and thus before "essential health benefits" were formally defined,

would have been unreasonable to conclude that dialysis was not an essential health benefit. Thus, to assess the reasonableness of Humana's decision to exclude coverage for dialysis in 2013, the court would look to how an insurer in 2013 would have understood the term "essential health benefits." Aside from the arguments rejected above, Fresenius does not develop or support an argument as to what an insurer in 2013 would have reasonably understood as to the meaning and scope of the term essential health benefits.

Therefore, Fresenius has failed to show that Humana's conclusion in 2013 that dialysis was not an essential health benefit was unreasonable. Consequently, the court must deny Fresenius's motion for partial summary judgment.

## IV. Conclusion

The court finds that it must deny both sides' motions for partial summary judgment. The parties agree that the question before the court is whether it was reasonable for the defendants to conclude that dialysis was not an essential health benefit in 2013. To prevail on its motion Fresenius must prove that there is no dispute of material fact that Humana was unreasonable in concluding that dialysis was not an essential health benefit. But Fresenius's primary argument is built upon an unsound foundation. Although Congress identified the categories of items and services that must be covered when defining what services constitute an essential health benefit, it left it to the Secretary to define what items and services within those categories constitute

essential health benefits. The fact that dialysis for persons suffering from end stage renal disease might be regarded as "chronic disease management" does not mean that it was an essential health benefit.

The court must also deny Humana's motion. Humana contends that its conclusion that dialysis was not an essential health benefit was reasonable because dialysis was not expressly identified as an essential health benefit in the initial benchmark plans of 12 states. Setting aside the question of whether conclusions reached by other states suggests the reasonableness of a decision reached by an insurer in Wisconsin, Humana's position rests upon summaries of suspect validity as to whether each plan actually covered dialysis. Thus, the record before the court is insufficient to support summary judgment in Humana's favor.

**IT IS THEREFORE ORDERED** that the defendants' motion for partial summary judgment (ECF No. 44) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 47) is **denied.**

The Clerk shall set a telephonic conference to discuss further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 5th day of September, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge