# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FRESENIUS MEDICAL CARE
    MIDWEST DIALYSIS LLC, et al.,

        Plaintiffs,

v.                                               Case No. 16-CV-711

HUMANA INSURANCE COMPANY, et al.,

        Defendants.

# DECISION AND ORDER

## I. Background

On September 5, 2017, the court denied plaintiffs' and defendants' cross motions for summary judgment. *Fresenius Med. Care Midwest Dialysis LLC v. Humana Ins. Co.*, No. 16-CV-711, 2017 U.S. Dist. LEXIS 142970 (E.D. Wis. Sep. 5, 2017). The plaintiffs (collectively referred to as Fresenius) moved the court to reconsider that decision. (ECF No. 61.)

"A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly

erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, n. 8 (1983)); *see also DeKeyser v. ThyssenKrupp Waupaca Inc.*, No. 8-C-488, 2017 U.S. Dist. LEXIS 208217, at *7-8 (E.D. Wis. Dec. 19, 2017) (quoting *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015) ("[M]otions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence.")). "A manifest error of law or fact occurs 'when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.'" *Id.* (quoting *United States v. Ligas*, 549 F.3d 497, 501-02 (7th Cir. 2008)). "In general, 'litigants must fight an uphill battle in order to prevail on a motion for reconsideration.'" *Williams v. Miscichoski*, No. 06-C-1124, 2007 U.S. Dist. LEXIS 94831, at *3 (E.D. Wis. Dec. 14, 2007) (quoting *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996)).

II. **Essential Health Benefit**

A short recap of the background of this case will help put the motion to reconsider in context. In simplified terms, the question presented by the parties' summary judgment motions was whether in 2013 the defendant health plans (whom the court will refer to collectively as Humana) could cap at $30,000 per insured its coverage for dialysis that Fresenius provided to Humana's insureds. Fresenius contends

2

that dialysis was an essential health benefit under the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, and as such Humana had to provide at least $2 million in coverage for each insured for dialysis in 2013, *see* 45 C.F.R. § 147.126(d)(1)(iii) (Oct. 1. 2013 ed.).

"Essential health benefit" is a term of art under the ACA that Congress left to the Secretary of the Department of Health and Human Services (HHS) to define. 42 U.S.C. § 18022(b)(1). But Congress said that essential health benefits shall include

> at least the following general categories and the items and services covered within the categories:
> (A) Ambulatory patient services.
> (B) Emergency services.
> (C) Hospitalization.
> (D) Maternity and newborn care.
> (E) Mental health and substance use disorder services, including behavioral health treatment.
> (F) Prescription drugs.
> (G) Rehabilitative and habilitative services and devices.
> (H) Laboratory services.
> (I) Preventive and wellness services and chronic disease management.
> (J) Pediatric services, including oral and vision care.

42 U.S.C. § 18022(b)(1). Congress further stated that "[t]he Secretary shall ensure that the scope of the essential health benefits … is equal to the scope of benefits provided under a typical employer plan, as determined by the Secretary." 42 U.S.C. § 18022(b)(2). To enable the Secretary to assess what sorts of benefits were typically covered by employers, Congress required the Secretary of Labor to conduct a survey of employer plans. *Id.*

The Secretary of HHS left it to each state to articulate the scope of benefits in a typical employer plan in that state. Each state did so through the adoption of a "benchmark plan," which defined coverage effective for 2014. Wisconsin's benchmark plan covered dialysis, and there is no dispute that starting in 2014 dialysis was an essential health benefit in Wisconsin.

### A. Reasonable Interpretation Standard

Before essential health benefits were defined with the adoption of the state benchmark plans, the departments charged with enforcing compliance with the ACA stated in an interim final rule issued on June 28, 2010, that they would "take into account good faith efforts to comply with a reasonable interpretation of the term 'essential health benefits'." 75 Fed Reg. 37188, 37191. In its decision denying the parties' summary judgment motions the court stated, "The parties agree that this 'reasonable interpretation' standard applies to the question of whether Humana complied with the ACA in capping dialysis benefits at $30,000 in 2013." *Fresenius Med. Care Midwest Dialysis*, 2017 U.S. Dist. LEXIS 142970, at *7. The court then applied the reasonable interpretation standard in its analysis.

In its motion to reconsider Fresenius contends that the court erred on this point; it, in fact, did *not* agree that the "reasonable interpretation" standard applies to the question of whether Humana complied with the ACA in capping dialysis benefits at $30,000 in 2013. (ECF No. 61 at 3.) Various statements in Fresenius's summary judgment

briefs led the court to conclude that Fresenius agreed that the reasonable interpretation standard applied. However, the court acknowledges that Fresenius also argued that Humana's reasonable interpretation standard "has no support in the ACA itself" and that the interim final rule was limited to enforcement actions. (ECF No. 58 at 5.) It continued,

> However, this is not an enforcement action by a regulatory agency. The question here is not whether an agency should exercise its discretion to take enforcement action against Defendants; the question is whether, under the law in 2013, the definition of EHBs included dialysis to treat [end stage renal disease]. The statute itself contains no obligation that Plaintiffs demonstrate that Defendants did not act in good faith, nor do Plaintiffs have to show that Defendants did not act reasonably.

(ECF No. 58 at 5-6.) The court concludes that it erred in concluding that Fresenius agreed that the 'reasonable interpretation' standard applies to the question of whether Humana complied with the ACA in capping dialysis benefits at $30,000 in 2013.

Moreover, the court agrees that, in articulating the "reasonable interpretation" standard, the Secretary stated that it applied to enforcement actions. 75 Fed Reg. 37188, 37191. It arguably reflects an assurance by the Secretary that, in light of the ambiguity and uncertainty surrounding the meaning of the term "essential health benefits," it would curtail its discretion in enforcement actions and not take action when the insurer's position was reasonable, even if it might be incorrect in the Secretary's view. Therefore, the court concludes that it erred in applying the reasonable interpretation standard for purposes of assessing Humana's compliance in 2013 with § 18022(b).

**B. Meaning of "Essential"**

On the issue of whether dialysis was an essential health benefit under § 18022(b) in 2013, Fresenius argues that the court also erred when it stated, "The court does not read the statute's reference to a health benefit as 'essential' to mean the item or service is necessary to sustain the life of the insured. Rather, when the statute refers to a health benefit as 'essential' it means a health benefit that is absolutely necessary to a health plan." *Fresenius Med. Care Midwest Dialysis*, 2017 U.S. Dist. LEXIS 142970, at *14-15. Fresenius argues that *no* benefits are essential to a health plan, pointing out that *large* group health plans are not required to provide *any* particular benefits. It argues that the court's conclusion "is directly at odds with both the plain meaning of the terms Congress employed …, as well as the legislative history of the ACA." (ECF No. 61 at 10.) According to Fresenius, "essential" means that the benefits are essential to the health of patients. (ECF No. 61 at 11.) That, of course, includes benefits that are essential to the *survival* of covered individuals, as dialysis is to persons suffering from end stage renal disease. (ECF No. 61 at 10 and ECF No. 66 at 4.) Noting that neither party argued for the court's reading of "essential health benefits," Fresenius contends that the court's reading was "patently incorrect" and "a manifest error of law that is wholly unsupportable." (ECF No. 61 at 9, 11.)

Humana for its part says that the court's reading of the term "essential" was dicta and does not justify reconsidering the court's decision denying the parties'

6

summary judgment motions. (ECF No. 64 at 8.) Moreover, it says that it understood the court to be saying that "essential health benefit is a term of art encompassing benefits that are 'essential' only because they are required under the ACA." (ECF No. 64 at 9.)

Humana's understanding of the court's decision is essentially correct, although the court does not believe that its statement about the meaning of "essential" was dicta. As stated by Humana, essential health benefits are essential because they are required under the ACA—*i.e.*, every qualified plan must have them. The court is unpersuaded that it erred in its reading of what "essential" means.

Congress left it to the Secretary to define the scope of benefits required under 42 U.S.C. § 18022, instructing the Secretary to "ensure that the scope of the essential health benefits … is equal to the scope of benefits provided under a typical employer plan …." 42 U.S.C. § 18022(b)(2). It went further to note certain "elements" that the Secretary was required to consider in defining the term. 42 U.S.C. § 18022(b)(4). At no point did Congress state or even suggest that, when defining what constitutes an "essential health benefit," the Secretary should consider whether the benefit is essential to the survival of patients. The framework Congress created is at odds with Fresenius's proposed construction of "essential health benefits."

### C. Legislative History

The legislative history of what became 42 U.S.C. § 18022(b) (which Fresenius does not actually address other than to assert that Rep. Henry Waxman once

7

purportedly referred to essential health benefits as "essential medical care" (ECF No. 61 at 10-11)) supports the court's view that "essential health benefits" refers to those benefits a plan must offer, and *not* to any product or service that is essential to the survival of patients.

The first bill introduced that is directly traceable to the ACA was H.R. 3200 – America's Affordable Health Choices Act of 2009, 111th Cong. (2009). *See* John Cannan, *A Legislative History of the Affordable Care Act: How Legislative Procedure Shapes Legislative History*, 105 Law Libr. J. 131, 137 (2013). The bill used the term "essential health benefits" only in a broad statement of policy that said that the bill sought to reform insurance to "initiate[] shared responsibility among workers, employers, and the government; so that all Americans have coverage of essential health benefits." § 100(a)(3)(D). Section 122 of the bill listed ten categories of services that were similar but not identical to those eventually set forth in § 18022(b). But the bill did not refer to these services as "essential health benefits." Instead, they were referred to as "minimum services to be covered" as part of an "essential benefits package." It was this bill to which Rep. Waxman was referring in the statement cited by Fresenius. *See* 2009 WL 3326522. But, contrary to what Fresenius says (*see* ECF No. 61 at 10-11), Rep. Waxman never used the term "essential health benefits" and did not call "essential health benefits" "essential health care services." *Id.* He said only that "the bill provides … [a] required core set of benefits to ensure coverage for essential health care services."

Thus, in referring to what would become "essential health benefits" as "minimum services to be covered," the House at the earliest stages of the legislative process made clear that it was concerned with prescribing a floor of benefits that every qualified health plan must include.

The Senate's nomenclature was different but its underlying rationale equally as clear. The bill introduced in the Senate in which the term "essential health benefits" was first used in a sense similar to that in which the term is used in § 18022(b) used "essential health benefits" to refer to the minimum coverage required in a plan. *See, e.g.*, S. 1679, 111th Cong. § 3103(a)(1)(A), (2), (c)(1) (2009). A subsequent Senate bill, emerging from the Finance Committee, used the term "essential health benefits" to describe a baseline of insurance coverage. It required individuals to maintain "essential health benefits coverage," S. 1796, 111th Cong. § 5000A, ch. 48, which it defined as coverage under particular plans, *id.* § 5000A(f). In listing the requirements a plan must meet to qualify for certain credits, the bill stated that the plan must provide "essential health care benefits" that included coverage in ten "general categories" that were nearly identical to those of § 18022(b). S. 1796, § 3103(a).

The Senate merged these divergent proposals into a form close to the final law by way of Senate amendment 2786 to H.R. 3590, *see* S. Amend. 2786, 155 Cong. Rec. S11,607 (daily ed. Nov. 19, 2009). In doing so, the Senate opted to use its term "essential health benefits" instead of the House's "minimum services to be covered" to describe the

minimum coverage a plan must provide. But the import of these terms was the same throughout the drafting process—identifying those products and services absolutely necessary, *i.e.* essential, for a plan to meet the minimum standards under the law. The court has not identified any instance in any draft of the law or committee report where it was proposed that "essential health benefits" should be defined as including any benefit essential to the survival of the insured.

Nor is the court's reading of the statute inconsistent with Congress's intent to protect patients, as Fresenius says it is (*see* ECF No. 61 at 10). One of Congress's aims certainly was to protect patients; after all, it named the act the Patient Protection and Affordable Care Act. But Congress protected patients by ensuring that insurance plans provided a minimum baseline of meaningful benefits coverage. For example, the House Committee on Ways and Means reporting on H.R. 3200 said the "essential benefits package" provision was necessary "[t]o ensure that Americans will be guaranteed a defined level of benefits, with numerous options available in order to ease comparison shopping among plans based on cost and quality not manipulation of benefits." *See* H.R. Rep. No. 111-299 pt. 2, at 212. (2009). By ensuring a baseline of coverage, Congress sought to mitigate a concern that a patient would choose a plan only to later learn that it lacked basic coverages.

In sum, the court rejects Fresenius's argument that, "[i]f the word 'essential' in 'essential health benefits' means anything, it must mean, at a minimum, necessary to

prevent death." (ECF No. 58 at 7.) That is not what the statute means nor what Congress intended. Although through its revisions and reconciliation Congress changed the term from "minimum" to "essential," the meaning remained unchanged. "Essential" in § 18022 should be understood in the sense of "minimum" or "required" and assessed in the context of whether a plan meets the minimum standards to be considered a "qualified health plan" under the law. Thus, an "essential health benefit" is one that the Secretary has concluded is necessary to comply with the parameters set forth by Congress to make the plan equal to the scope of benefits under a typical employer health plan.

### III.   Analysis of Motion for Reconsideration

Having concluded that the court erred in applying a "reasonable interpretation" standard when resolving the parties' cross motions for summary judgment, the court finds it necessary to reconsider those motions. The court considers the motions anew to determine whether Fresenius has proven that dialysis was an essential health benefit for insureds in Wisconsin in 2013 and conversely whether Humana has proven that it is not.

Fresenius contends that "the statute permitted agency clarification of the parameters of what benefits are specifically included within 'essential health benefits,' but it always required that all healthcare services in the categories listed in [42 U.S.C. § 18022(b)]—including for chronic disease management—be included." (ECF No. 48 at

10.) It argues (and no one disputes) that end stage renal disease is a chronic disease and that dialysis is necessary to manage it. Thus, according to Fresenius, dialysis is an essential health benefit under 42 U.S.C. § 18022(b).

Congress stated, "Subject to paragraph (2), the Secretary shall define the essential health benefits, except that such benefits shall include at least the following general categories and the items and services covered within the categories[.]" It then went on to list the ten general categories set forth in § 18022(b). Fresenius's reading of the statute as requiring that insurers cover *everything* within those ten categories overlooks the first clause of the sentence—"[s]ubject to paragraph (2)."

"Paragraph (2)," for its part, includes the requirement that the Secretary "ensure that the scope of the essential health benefits under paragraph (1) is equal to the scope of benefits provided under a typical employer plan, as determined by the Secretary." 42 U.S.C. § 18022(b)(2). Thus, Fresenius is incorrect when it argues that Congress "always required that all healthcare services in the categories listed in the statute" be included. (ECF No. 48 at 10.) Rather than merely "permit[ting] agency clarification of the parameters of what benefits are specifically included within 'essential health benefits,'" as Fresenius asserts (ECF No. 48 at 10), Congress left it to the Secretary to determine the scope of coverage within these categories so as to ensure that it was equal to that offered under a typical employer health plan.

Fresenius argues that, although some services might be "borderline, such that it is difficult to determine whether they should be considered EHBs, … dialysis for [end stage renal disease] patients is an easy question." (ECF No. 58 at 8-9.) But what Fresenius overlooks is that Congress explicitly assigned to the Secretary the task of defining what services are covered under such categories as "chronic disease management." Fresenius is not asking the court to apply tools of statutory construction to interpret the term "chronic disease management." Rather, it is asking the court to usurp the role that Congress assigned to the Secretary and define the scope of coverage during a period before the Secretary acted. Regardless of whether the question is "easy," it is not a question that the court has any role in answering; Congress left that to the Secretary.

In short, the court cannot conclude that dialysis was an essential health benefit in 2013 under the category of chronic disease management because the Secretary had not yet said that it was. This does not mean that 42 U.S.C. § 18022(b)(1) was without meaning until the Secretary defined "essential health benefits." But it does not mean what Fresenius argues it does.

Congress defined the categories of health benefits that must be included in a covered health plan, but it left it to the Secretary to define the products and services covered in those categories. Therefore, in 2013 insurance plans subject to 42 U.S.C. § 18022(b) could no longer exclude coverage for all products or services in one or more

of the categories listed in the statute. Against this backdrop a beneficiary might claim that an insurer violated its obligation under 42 U.S.C. § 18022(b)(1) by excluding an entire category of benefits or services that are required to be covered, or offering so scant an array of benefits in a given category that it was the functional equivalent of excluding coverage. But that is not the nature of Fresenius's claim. Fresenius argues that a particular service—dialysis—*must* be covered. The only way a particular service *must* be covered under 42 U.S.C. § 18022(b)(1) is if the Secretary says it must be covered, *i.e.*, that it is within the scope of a Congressionally created category as an essential health benefit. Because the Secretary did not say dialysis was within the scope of "chronic disease management" for 2013, no basis exists for the court saying so.

### IV. Conclusion

Having reconsidered Fresenius's motion for summary judgment, the court concludes that it must again deny it. In using the term "essential health benefits," Congress referred to the minimum baseline of benefits a plan must offer to make it equivalent to a typical employer plan. When it prohibited plans from excluding coverage for certain categories of services such as "chronic disease management," Congress did not mandate that plans cover any specific benefit within those categories. Congress left it to the Secretary to identify what products or services were covered within each of the categories it set forth.

Because the Secretary did not define essential health benefits for 2013 as including dialysis, Fresenius cannot prevail on its motion for summary judgment (or, as a result, this action). That being the case, upon reconsideration, Humana is entitled to relief pursuant to its cross motion for summary judgment.

**IT IS THEREFORE ORDERED** that Fresenius's motion for reconsideration (ECF No. 61) is **granted in part**.

**IT IS FURTHER ORDERED** that summary judgment is **granted** in favor of the plaintiffs and against the defendants with respect to claims regarding services provided in the 2014 calendar year. The defendants have not opposed the plaintiffs' claim that an annual cap of $30,000 for dialysis benefits was unlawful as of 2014.

**IT IS FURTHER ORDERED** that summary judgment is **granted** in favor of the defendants as to the plaintiffs' claim that a cap of $30,000 for dialysis benefits was unlawful for the 2013 calendar year.

**IT IS FURTHER ORDERED** that the Clerk shall schedule a telephonic conference to discuss any further proceedings regarding the remaining claims in the complaint.

Dated at Milwaukee, Wisconsin this 5th day of February, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge